IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

**FEDERAL INSURANCE COMPANY**                                  **PLAINTIFF/
                                                         COUNTER-DEFENDANT**

**v.**                                              **CAUSE NO. 1:15CV236-LG-RHW**

                                                              **DEFENDANT/
SINGING RIVER HEALTH SYSTEM**                    **COUNTER-PLAINTIFF**

**MEMORANDUM OPINION AND ORDER GRANTING SINGING
RIVER'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

**BEFORE THE COURT** is the Motion for Partial Summary Judgment and

Injunctive Relief, or in the Alternative, Motion for Preliminary Injunction [24] filed

by Singing River Health System and Singing River Health System Foundation

(sometimes collectively referred to as Singing River).  After briefing was concluded

on the Motion, Singing River filed a Motion [56] for an Order Setting a Hearing.

Federal Insurance Company has also filed a Motion [34] to Strike the Affidavit of

William D. Hager, which was submitted by Singing River in support of the pending

Motion.  The Motion to Strike has been fully briefed by the parties.  After reviewing

the submissions of the parties, the record in this matter, and the applicable law, the

Court finds that Singing River's Motion for Partial Summary Judgment should be

granted.  Singing River's Motion for a Permanent Injunction and Motion for a

Preliminary Injunction are moot.  Federal's Motion to Strike and Singing River's

Motion for a Hearing are moot.

BACKGROUND

Numerous state and federal lawsuits have arisen out of the alleged under-

funding of the Singing River Health System Employees' Retirement Plan and Trust.

Federal issued a policy to Singing River Health System for the period March 1, 2014, through March 1, 2015.  The policy contains two coverage sections: (1) an Executive Liability, Entity Liability, and Employment Practices Liability Coverage Section that provides $5 million in coverage and (2) a Fiduciary Liability Coverage Section that provides $1 million in coverage.  Federal agreed to defend all insureds under the policy subject to a reservation of rights in the lawsuits related to the Retirement Plan and Trust.  Federal allowed its insureds to select their own counsel.

Federal filed this lawsuit against Singing River Health System seeking a declaration that the maximum coverage available under the policy is the $1 million limit pertaining to fiduciary liability claims, because it claims that no coverage is provided under the Executive Liability, Entity Liability, and Employment Practices Liability Coverage Section of the policy.  Federal also seeks a declaration that the $1 million limit of the Fiduciary Liability Coverage section is eroded by defense costs incurred in the numerous cases filed against Singing River.  Furthermore, Federal seeks a declaration that it may withdraw from its defense of Singing River once the $1 million policy limits have been eroded through payment of defense costs, settlements, and/or judgments.  Although Singing River Health System is the only defendant named in Federal's Complaint, Federal notes that there are multiple potential insureds under the policy at issue who have been sued in state and federal court.

Singing River Health System has filed a counterclaim that names the

Singing River Health System Foundation as an additional "counter-plaintiff" and names Federal's claims manager, Chubb & Son, Inc. a/k/a The Chubb Group of Insurance Companies, as a "counter-defendant."[1]  The Counterclaim attempts to assert the following "causes of action": (1) "Waiver, Estoppel, Unenforceable and Void Provisions;" (2) Civil Conspiracy; (3) Breach of Contract; (4) Tortious Breach of Contract; (5) Breach of Fiduciary Duty; (6) Breach of Duty of Good Faith and Fair Dealing and Bad Faith; (7) Vicarious Liability; (8) Interference with Contract and Business Relations; (9) Conversion; and (10) Actions Precluded by the Public Policy of Mississippi.

## I.  THE MOTION [24] FOR PARTIAL SUMMARY JUDGMENT FILED BY SINGING RIVER

Singing River seeks partial summary judgment, arguing that the *Moeller* decision and the policy language prohibit Federal from deducting the insureds' defense costs from the policy limits.  In the alternative, Singing River argues that the Federal insurance policy violates Mississippi's public policy.

### A.  PERTINENT POLICY PROVISIONS

The policy provisions pertinent to the pending Motion are included in the Fiduciary Liability Coverage Section of the policy.  With regard to fiduciary liability claims, the declarations page states, "Unless Optional Separate Defense Costs Coverage is purchased pursuant to Item 2 above, the Limits of Liability will be

---

[1] Neither Chubb nor Singing River Health System Foundation were parties to the Complaint filed by Federal.

reduced and may be exhausted by Defense Costs." (Policy at 1 of 18, ECF No. 1-2).

Item 2 of the Singing River Declarations page notes that separate defense costs

coverage was not purchased. (*Id.*) The Declarations page also contains the

following notice in all capital letters:

> This coverage section provides claims made coverage, which applies only to "claims" first made during the "policy period," or any extended reporting period. The limit of liability to pay "loss" will be reduced and may be exhausted by "defense costs", unless otherwise specified herein, and "defense costs" will be applied against the retention. In no event will the company be liable for "defense costs" or other "loss" in excess of the applicable limit(s) of liability. Read the entire policy carefully.

(*Id.*)

There is a $1 million limit of liability for fiduciary liability claims. (*Id.*) The

Limit of Liability clause of the policy provides:

> (a) The Company's maximum liability for all Loss on account of each Fiduciary Claim first made during the Policy Period and covered under Insuring Clause 1 shall be the Limit of Liability set forth in Item 3(A) of the Declarations for this coverage section . . . .
> . . . .
> (c) Solely in the event that the Optional Separate Defense Costs Coverage is purchased, as set forth in Item 2 of the Declarations for this coverage section, a separate, additional limit of liability shall be available for Defense Costs incurred in connection with Fiduciary Claims . . . . **If the Optional Separate Defense Costs Coverage is not purchased, Defense Costs shall be part of, and not in addition to the Limits of Liability set forth in Items 3(A) and 3(C) of the Declarations of this coverage section, and the payment by the Company of Defense Costs shall reduce and may exhaust such applicable Limits of Liability.**

(*Id.* at 12-13 of 18) (emphasis added).

The policy contains the following pertinent definitions:

Loss means the amount that any Insured becomes legally obligated to

pay on account of any covered Fiduciary Claim, including but not limited to damages, judgments, settlement, pre-judgment and post-judgment interest, Defense Costs and, solely with respect to Insuring Clause 2, Settlement Fees.

Defense Costs means that part of Loss consisting of reasonable costs, charges, fees (including but not limited to attorneys' fees and experts' fees) and expenses (other than regular or overtime wages, salaries or fees or benefits of the directors, officers or Employees of the Organization) incurred in defending any Claim and the premium for appeal, attachment or similar bonds.

(*Id.* at 4 of 18, 5 of 18).  Finally, the policy provides:

The Company shall have the right and duty to defend any Claim covered by this coverage section, even if any of the allegations in such Claim are groundless, false or fraudulent.  The Company's duty to defend any Claim shall cease upon exhaustion of the applicable Limit of Liability.

(*Id.* at 14 of 18).

## B.  APPLICATION OF THE *MOELLER* DECISION

Singing River's first argument hinges on the definition of "loss" contained in the Federal policy.  The definition of "loss" specifically includes "defense costs," but only to the extent that the "Insured becomes legally obligated to pay" those costs. Singing River claims that it is not "legally obligated to pay" any defense costs in the pension plan lawsuits.  Furthermore, it asserts that Federal, not the insured, is legally obligated to pay those defense costs pursuant to *Moeller v. American Guarantee & Liability Insurance Co.*, 707 So. 2d 1062 (Miss. 1996).

In *Moeller*, the Mississippi Supreme Court held, "When defending under a reservation of rights . . . a special obligation is placed upon the insurance carrier . . . . [N]ot only must the insured be given the opportunity to select his own counsel to

defend the claim, the carrier must also pay the legal fees reasonably incurred in the

defense." *Moeller*, 707 So. 2d at 1069.  Singing River interprets these statements in

the *Moeller* decision to require the insurer to pay for independent counsel out of the

insurer's own funds; thus, Singing River argues that the insured is not "legally

obligated to pay" defense costs incurred pursuant to *Moeller*.  As a result, it claims

that these costs cannot be deducted from the policy limits owed to the insured.

The Mississippi Supreme Court has provided the following guidance for

interpreting insurance policies:

> Insurance policies are contracts and must be enforced according to
> their provisions.  Contractual parties making mutual promises must be
> entitled to the benefit of their bargain.  In interpreting an insurance
> policy, [courts] should look at the policy as a whole, consider all
> relevant portions together and, whenever possible, give operative effect
> to every provision in order to reach a reasonable overall result.  A court
> must effect a determination of the meaning of the language used, not
> the ascertainment of some possible but unexpressed intent of the
> parties.

*Minn. Life Ins. Co. v. Columbia Cas. Co.*, 164 So. 3d 954, 968 (¶48) (Miss. 2014)

(citations and quotation marks omitted).

> Generally, under Mississippi law, when the words of an insurance
> policy are plain and unambiguous, the court will afford them their
> plain, ordinary meaning and will apply them as written . . . .
> [A]mbiguous and unclear policy language must be resolved in favor of
> the non-drafting party – the insured.  Further, provisions that limit or
> exclude coverage are to be construed liberally in favor of the insured
> and most strongly against the insurer.

*Noxubee Cty. Sch. Dist. v. United Nat'l Ins. Co.*, 883 So. 2d 1159, 1165 (Miss. 2004).

Federal has cited two cases that held that similar defense costs within limits

clauses unambiguously provide that defense costs should be deducted from the

policy limits.  *See Helfand v. Nat'l Union Fire Ins. Co.*, 13 Cal. Rptr. 2d 295, 299

(Cal. 1992); *Exec. Risk Indemnity, Inc. v. Integral Equity, L.P.*, No. 3:03cv0269, 2004

WL 438936, at *10 (N.D. Tex. Mar. 10, 2004).  The policies at issue in both of these

cases defined "loss" as including defense costs that the insured was legally obligated

to pay as a result of a claim.  *See id.*  However, the insureds in those cases did not

argue that the phrase "legally obligated to pay" limited the "defense costs" that

could be used to reduce the policy limits, and thus those courts did not address the

issue presented here.

Federal also claims that some of the policy provisions that purport to provide

for defense within limits coverage are not tied to the policy's definition of "loss."  For

example, the policy provides:

> If the Optional Separate Defense Costs Coverage is not purchased,
> Defense Costs shall be part of, and not in addition to the Limits of
> Liability set forth in Items 3(A) and 3(C) of the Declarations of this
> coverage section, and the payment by the Company of Defense Costs
> shall reduce and may exhaust such applicable Limits of Liability.

(Policy at 12-13 of 18, ECF No. 1-2).  Accepting the arguments of Singing River,

Federal argues, would necessitate affording no meaning to these policy provisions

that do not reference "loss."  However, Singing River correctly notes that the policy's

definition of "Defense Costs" is limited by the definition of the word "Loss."[2]

---

[2] "Defense Costs means **that part of Loss** consisting of reasonable costs, charges,
fees (including but not limited to attorneys' fees and experts' fees) and expenses . . . .
incurred in defending any Claim and the premium for appeal, attachment or similar
bonds." (Policy at 4 of 18, ECF No. 1-2) (emphasis added).  "Loss means the amount that
any Insured **becomes legally obligated to pay** on account of any covered Fiduciary
Claim, including but not limited to . . . Defense Costs . . . . (*Id.* at 5 of 18) (emphasis

Therefore, Federal's argument in this respect is unpersuasive.

Federal also relies on the decision in *Southern Healthcare Services, Inc. v. Lloyd's of London*, 110 So. 3d 735 (Miss. 2013). In *Southern Healthcare*, the policy contained a deductible that provided that the insurer was not liable for defense costs until the insured had exhausted a $250,000 deductible. *S. Healthcare*, 110 So. 3d at 745 (¶22). The plaintiffs argued that the *Moeller* decision and other similar cases, such as *Baker Donelson Bearman & Caldwell, P.C. v. Muirhead*, 920 So. 2d 440 (Miss. 2006), impose "an absolute duty to defend" on insurers; thus, the plaintiffs claimed that the insurer was required to provide a defense before the deductible was exhausted. *Id.* at 748 (¶29). The Supreme Court disagreed, noting that *Moeller* and *Baker Donelson* "cannot be read in a vacuum." *Id.* "There is no indication," the court held, "that the policies in *Baker Donelson* or *Moeller* included a deductible so the principles therein cannot be strictly applied without taking into account the terms of the specific policies at issue." *Id.* This is because "[i]n Mississippi, an insurance company's duty to defend its insureds derives neither from common law nor statute, but rather from the provisions of . . . its insurance contract with its insured." *Baker Donelson*, 920 So. 2d at 450 (¶40); *see also Moeller*, 707 So. 2d at 1069 ("The liability insurance company has an absolute duty to defend a complaint which contains allegations covered by the language of the

---

added).

policy; it clearly has no duty to defend a claim outside the coverage of the policy.")

Applying the reasoning of the *Southern Healthcare* decision to the present case, the duty to defend arises solely from the insurance policy at issue; therefore, Federal's duty to defend Singing River is limited to the terms of its policy. The policy at issue defines "defense costs" in terms of the policy's definition of "loss." The term "loss" only includes defense costs that the insured is legally obligated to pay. Although Federal claims this interpretation of its policy is "strained," it has not provided any authority supporting its argument. At a minimum, the policy language is ambiguous and must be construed in favor of Singing River. Federal is not permitted to subtract defense costs paid pursuant to *Moeller* from the policy limits, because the insureds are not legally obligated to pay those costs. Under *Moeller*, Federal is the party that is legally obligated to pay the defense costs retained for the insureds' independent counsel. Therefore, Singing River's Motion for Partial Summary Judgment is granted. It is not necessary to consider Singing River's public policy arguments.

## II.  FEDERAL'S MOTION [34] TO STRIKE THE AFFIDAVIT OF WILLIAM D. HAGER

Singing River submitted an affidavit signed by an insurance expert, William D. Hager, in support of its Motion for Partial Summary Judgment or Preliminary Injunction. Mr. Hager's affidavit was not necessary to this Court's decision on Singing River's Motion for Partial Summary Judgment; therefore, the Motion to Strike the Affidavit is moot.

### III. SINGING RIVER'S MOTION FOR AN ORDER SETTING A HEARING

The Court finds that a hearing is not necessary due to the extensive briefs submitted by the parties. Singing River's Motion for a Hearing is moot.

### IV. SINGING RIVER'S MOTION FOR A PERMANENT OR PRELIMINARY INJUNCTION

Since this Court has held as a matter of law that the insureds' defense costs do not erode the policy limits and since Federal has been paying the insureds' defense costs, the Court finds that Singing River's request for a permanent or preliminary injunction is moot at this time.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that the Motion for Partial Summary Judgment [24] filed by Singing River Health System and Singing River Health System Foundation is **GRANTED**. Singing River is entitled to judgment as a matter of law that defense costs paid in the underlying pension plan litigation pursuant to *Moeller* should not be deducted from the policy limits.

**IT IS FURTHER, ORDERED AND ADJUDGED** that the Motion for a Permanent Injunction [24] and Motion for a Preliminary Injunction [24] are **MOOT**.

**IT IS FURTHER, ORDERED AND ADJUDGED** that the Motion [56] for an Order Setting a Hearing filed by Singing River Health System and Singing River Health System Foundation is **MOOT**.

**IT IS FURTHER ORDERED AND ADJUDGED** that the Motion [34] to Strike the Affidavit of William D. Hager filed by Federal Insurance Company is **MOOT**.

**SO ORDERED AND ADJUDGED** this the 2nd day of October, 2015.

s/ *Louis Guirola, Jr.*
LOUIS GUIROLA, JR.
CHIEF U.S. DISTRICT JUDGE